**Dale J. FAZEKAS, Plaintiff,**

v.

**CRAIN CONSUMER GROUP DIV. OF CRAIN COMMUNICATIONS, INC. d/b/a AutoWeek, Defendant.**

**No. IP 81–347–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 19, 1984.

Charles E. Johnson, Johnson, Siegal & Coffey, John H. Caress, Richards, Caress, Vargo & Light, Indianapolis, Ind., for plaintiff.

Lee B. McTurnan, Michael B. Cracraft, Smith, Morgan & Ryan, Indianapolis, Ind., for defendant.

DILLIN, Chief Judge.

### ENTRY

This matter comes before the Court on the May 12, 1983 motion of defendant Crain Communications, Inc. ("Crain") for summary judgment on the issues of plaintiff Dale J. Fazekas' January 6, 1982 amended complaint and Crain's answer and affirmative defenses filed on February 9, 1982. The motion became fully briefed with the filing of the movant's reply on July 15, 1983. For the reasons stated below, the defendant's motion is GRANTED.

### Background

This is a libel action brought by Dale J. Fazekas against Crain. Crain is the pub-

lisher of *AutoWeek*, a weekly magazine-type publication directed to automobile and racing enthusiasts.

Plaintiff Fazekas is a successful race driver in the "Showroom Stock" racing category sponsored by the Sports Car Club of America. Showroom Stock is a category of racing designed to provide a means by which individuals may participate in racing street stock automobiles—cars presumed to have been purchased primarily for daily street transportation—without incurring the burdensome expenses normally attendant professional racing. Fazekas is a two-time national champion in the Showroom Stock racing category, the only driver to have won the national championship more than once.

Significant modifications in Showroom Stock cars, made in an effort to increase a car's performance, are forbidden by SCCA club rules. Such modifications create unfair advantages in the modified vehicles while decreasing competition from non-modified vehicles. Further, modifications drive up expenses and contravene the specific purposes for which the Showroom Stock racing category was created.

On January 6, 1982, Fazekas filed an amended complaint alleging that false and defamatory statements were published in the February 9, 1981 issue of *AutoWeek*. More specifically, Fazekas claimed that he was defamed when *AutoWeek* published certain allegedly false statements made by a competing Showroom Stock race driver, Kenneth Williams, to *AutoWeek* writer James Gandy.

As reported in the *AutoWeek* issue in question, Williams stated to Gandy that after purchasing a 1979 Porsche 924 Showroom Stock race car from Fazekas pursuant to a claiming rule, he and his mechanic disassembled and inspected the vehicle. Williams stated that he discovered a number of illegal modifications that had been made on the car, impliedly by Fazekas, in order to improve its performance. Fazekas contends that he made no such modifications and that Crain should be liable for defamation in publishing the allegedly false statements of Williams. Fazekas further claimed that in preparing and publishing the article in the February 9, 1981 issue, Crain, Williams and Gandy acted with actual malice and in a manner calculated to cause great injury to plaintiff's reputation.

Although originally named as defendants along with Crain, Kenneth Williams and James Gandy were dismissed from the action for lack of personal jurisdiction by judgment of this Court dated July 29, 1982. Crain, as publisher of *AutoWeek*, is the only remaining defendant.

Although at no time conceding that the published statements may have been false, Crain has claimed that the publication of the statements was privileged under the first and fourteenth amendments to the United States Constitution and also under Article 1, Section 9 of the Indiana Constitution. Crain's defense of privilege is the basis of its motion for summary judgment.

## Discussion

Beginning with the landmark opinion rendered by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a substantial body of case law has developed that, at least in broad terms, defines the limitations on state libel laws imposed by the constitutional guarantees of freedom of speech and press. It can now be stated that by virtue of these guarantees, grounded primarily in the first amendment, a qualified privilege exists for all media expression.

In the *New York Times* case, the Supreme Court recognized that factual error is inevitable in free debate and thus must be countenanced in order to prevent self-censorship and its chilling effect on freedom of expression. With this in mind, the Court held that the federal constitutional guaranty of freedom of speech and press prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the statement was published with actual mal-

ice. *New York Times, supra* at 279–80, 84 S.Ct. at 725–26. To establish actual malice, a plaintiff must prove that a defendant published a statement with actual knowledge of its falsity, or with reckless disregard of whether it was false or not. *Id.* at 280, 84 S.Ct. at 726.

The concept of "reckless disregard" for purposes of demonstrating actual malice was refined in several Supreme Court cases decided after *New York Times.* In *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), the Court explicitly rejected a negligence standard for satisfying the actual malice requirement and instead held that reckless disregard may be found if the defamatory falsehoods were published with a "high degree of awareness of their probable falsity." *Id.* at 74, 85 S.Ct. at 215. In *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Court held that reckless disregard may also be found if the defendant publisher "in fact entertained serious doubts as to the truth of his publication." *Id.* at 731, 88 S.Ct. at 1325.

The actual malice requirement for libel actions, which has come to be known as the New York Times rule, was held to be equally applicable in cases involving public figures who were not public officials. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). There has been some debate, however, on the extent to which the New York Times rule should apply to defamatory falsehoods involving private individuals.

In *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Court was faced with the issue of whether a private individual need prove actual malice in libel actions against the media. Shifting the focus from the plaintiff's status as a "public" or "private" figure, the Court held that, so long as the publication concerned a matter of general or public interest, the *New York Times* actual malice standard applied. Therefore, if the published statement were deemed newsworthy, then the New York Times

rule had application regardless of the plaintiff's status.

Three years later, in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court re-emphasized the plaintiff's status as "public" or "private" and de-emphasized the "mere newsworthiness" of the published matter. The Court held that the New York Times rule requiring proof of actual malice did not necessarily apply to private individuals even if they were libeled in a publication concerning a matter of general or public interest.

Addressing federal constitutional limitations on state libel laws, the *Gertz* Court held that the individual states would be allowed to impose any appropriate standard of liability on publishers of defamatory falsehoods based on a less demanding proof than that required by the New York Times rule. 418 U.S. at 346–347, 94 S.Ct. at 3010. The *Gertz* Court indicated that a simple negligence standard of fault would be constitutionally permissible, but that liability without fault and libel *per se* were inappropriate standards of liability. *Id.*

Later in 1974, the Indiana Court of Appeals acted on the substantial latitude given by the Supreme Court in *Gertz* and specifically defined the appropriate standard of liability for media libel actions in Indiana. In *AAFCO Heating and Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580 (1974), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1975), the Court of Appeals declined to follow the *Gertz* Court's suggestion of adopting a fault standard less demanding than that of actual malice. Instead, the Court explicitly adopted the *Rosenbloom v. Metromedia, Inc., supra,* standard in which the New York Times rule applied to all publications concerning an event or topic of general or public interest.

In discussing the standard, the Indiana Court of Appeals stated that "the publication of matters which are of general or public concern is an activity protected by Article 1, Section 9 of the Indiana Constitu-

tion." 162 Ind.App. at 67, 321 N.E.2d at 585–586. The law in Indiana is clear that if a publication concerns a matter of general or public interest, it is privileged. In order to overcome that privilege, a libel plaintiff must prove actual malice by clear and convincing evidence. *Id.* at 679, 321 N.E.2d at 586. Moreover, whether a matter is of general or public interest for purposes of applying the "malice" privilege standard is a determination to be made by the trial courts. *Id.* at 686, 321 N.E.2d at 590.

Although there is substantial evidence in the case at hand to suggest that plaintiff Dale J. Fazekas is a public figure, under *AAFCO* this Court need not make a determination of his status; rather, the key analytic determinant is whether the February 9, 1981 article in *AutoWeek* involved a matter of general or public interest.

The column in which the February 9, 1981 article in question appeared, writer James Gandy's "Club Racing Lines," was devoted to club racing under the auspices of the (Sports Car Club of America). The readers to whom the column was directed were participants and fans of club racing, including the Showroom Stock category.

The subject matter of the article in question was Showroom Stock racing rules and enforcement. Although this particular subject matter could not be considered of pervasive general or public interest to everyone, it was at least of general interest to Showroom Stock racing enthusiasts—the very "community" to which Gandy's column was directed. Moreover, it was within very nearly this same "community" that the plaintiff alleges he was defamed. *See* Amended Complaint paragraph 5. In other words, the community in which the plaintiff alleges he was defamed is almost precisely the community to which the article's subject matter would be of general interest.

■ A matter of general or public interest is one in which "(t)he public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct . . ." *Rosenbloom*, 403 U.S. at 43, 91 S.Ct. at 1819. The "content, effect

and significance" of allegedly illegal conduct on the part of a two-time national champion race driver is clearly a matter of general interest to the Showroom Stock participants and fans who were readers of the February 9, 1981 column. Accordingly, defendant Crain may properly evoke the privilege defense.

■ As earlier discussed, in order to overcome the defense of privilege, the plaintiff must prove actual malice on the part of Crain by clear and convincing evidence. *New York Times, supra.* " 'Actual malice' may not be 'presumed', but is a matter of proof by the plaintiff . . . Absent proof with 'convincing clarity' summary judgment must be granted to the defendants." *Fadell v. Minneapolis Star & Tribune Co.,* 425 F.Supp. 1075, 1086 (N.D. Ind.1976). The plaintiff cannot rely upon the hope that witness cross-examination will raise a credibility issue as regards actual malice. *Id.,* Fn. 8.

■ The plaintiff's burden of proof being thus defined, it is apparent that summary judgment must be granted in favor of the defendant. The plaintiff has failed to present any evidence that would establish Crain's actual knowledge of falsity in the article in question. The plaintiff has also failed to establish a high degree of awareness of the article probable falsity by Crain, or even that Crain may have had serious doubts as to the truth of its publication.

Instead, the plaintiff argues that Crain should have been aware that a controversy was brewing regarding Fazekas' involvement in Showroom Stock rules and enforcement. The plaintiff further argues that Crain had a duty to inquire about the accuracy of the statements contained in the February 9 article of *AutoWeek.* Such duty and foreseeability language amounts to nothing more than stating elements to support an allegation that Crain may have been negligent in publishing the article. This argument represents a substantial retreat from the plaintiff's initial allegation of actual malice in his amended complaint.

In any event, mere negligence will not support recovery of damages in libel actions where, as here, the publication is privileged. *Garrison v. Louisiana, supra.*

Commenting on the role of the summary judgment device in defamation actions involving privileged media expression, Judge Sharp of the Northern District of Indiana observed the following:

> Following the decision of *New York Times Co. v. Sullivan, supra,* it has been established that summary judgment is a singularly important factor in the protection of freedom of the press from libel suits. The "chilling effect" of a libel suit on First Amendment rights calls for a judicial attitude more favorable to summary judgment than in (the) ordinary case, where prevailing attitudes generally disfavor the liberal use of summary judgment dispositions. Thus, in *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 865 (5th Cir.1970), the court noted that, where *Times v. Sullivan* applies, "summary judgment, rather than trial on the merits, is a proper vehicle for affording constitutional protection in the proper case."

*Fadell v. Minneapolis Star & Tribune Co.,* 425 F.Supp. 1075, 1085 (1976).

On this record the plaintiff cannot establish actual malice on the part of Crain by clear and convincing evidence. Fazekas has offered no facts bearing on the dispositive issue. Instead, Fazekas has submitted three, four-line affidavits that are irrelevant and create no genuine issue of material fact. Each of the affidavits relates only to the ultimate truth of what Williams reported to Gandy about the condition of the ex-Fazekas engine or car and thus raises no material issue for summary judgment under the actual malice standard.

Judgment will be entered in accordance herewith.