**FITZROY BRYANT, Plaintiff**

v.

**ASSOCIATED PRESS and DAILY NEWS PUBLISHING COMPANY, INC., Defendants**

Civil No. 82/261

District Court of the Virgin Islands

Div. of St. Croix

October 9, 1984

LOLITA D'JONES, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

FREDERICK G. WATTS, ESQ., St. Thomas, V.I., *for defendant Associated Press*

ADRIANE J. DUDLEY, ESQ., St. Thomas, V.I., *for defendant Daily News Publishing Co., Inc.*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on motion of defendants Daily News Publishing Company, Incorporated (hereafter "Daily News") and the Associated Press (hereafter "A.P.") for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Fitzroy Bryant (hereafter "Bryant" or "plaintiff") resists summary judgment in this libel action asserting that no questions of material fact are presented requiring resolution by a jury. Since we conclude that no issues of material fact are raised by the present record and that plaintiff has failed as a matter of law to make his case against either the *Daily News* or the A.P., summary judgment will be granted.

## FACTS

The summer of 1982 found the normally pacific isles of St. Kitts and Nevis embroiled in heated, and often violent, disagreement over the desirability of, and framework for, independence from Great Britain. Premier Kennedy Simmonds had been leader of the St. Kitts-Nevis government since February of 1980 when his party, the People's Action Movement, joined with the Nevis Reform Party to oust the Labour Party government in a general election. On August 29, 1982, Bryant, chairman of the now opposition Labour Party spoke at a rally on St. Kitts organized to protest any move by St. Kitts and Nevis toward independence before holding another general election. During his speech Bryant reportedly called on those in attendance to remove the Simmonds' government from office and encouraged them to accept any risk in accomplishing that goal.

Several days later another incident further heightened the emotions of Kittitians. In the early hours of Wednesday September 2, 1982, a fire in the capital of Basseterre destroyed the historic Supreme Court building, a picturesque landmark of St. Kitts for some 200 years. The island was in an uproar. Police investigators discovered the fire to have been deliberately set, and Premier Simmonds wasted no time in pointing his finger at leaders of the opposition Labour Party. A tempest of accusations and cross-accusations followed.

At some point the determination was made that Bryant's August 29th speech was so impassioned as to be criminal. On Saturday, September 4, 1984, just prior to a scheduled public meeting, Bryant was arrested and charged with inciting people to violence.

The next day a printed A.P. wire dispatch reporting on the events in St. Kitts was received via teletype in the *Daily News'* newsroom in St. Thomas, U.S. Virgin Islands. The dispatch, in pertinent part, reads as follows:

POLITICIAN ARRESTED, 250
CABLES, APW, FOR LD.

BASSE TERRE, ST. KITTS (AP) A rival political leader in this Caribbean British associated state was arrested Saturday afternoon after Premier Kennedy Simmonds said some political leaders were "responsible" for the fire that burned the Supreme Court in Basse Terre last Wednesday.

Labor Party Chairman Fitzroy Bryant was arrested without

143

bail and charged by police with giving speeches that were "inciting people to violence," but court and police spokesmen declined to reveal further details. He was arrested at his home in St. Kitts at 1:30 P.M. (AST) and taken the [sic] police headquarters in Basse Terre.

About three thousand Labor Party followers held a protest rally shortly after Bryant's arrest, but no (no) incident was reported. Police concluded Friday that the fire that burned the two-story Supreme Court building had been maliciously set. Another arson attempt against a People's Action Movement party office in Charleston, on the off-island of Nevis, is being investigated by police, after a gasoline-soaked rope was found there the same day the Supreme Court burned in Basse Terre. . . .

*Daily News* Motion, Exhibit B.

The wire editor judged the developments in St. Kitts to be newsworthy in the Virgin Islands and decided to publish the item in the next day's *Daily News*. He reviewed the story, composed a headline, and with minor changes, the dispatch as received was published on page 4 of the September 6, 1982, *Daily News* under the headline "St. Kitts official jailed for arson." See *Daily News* Motion, Exhibit A.

On the following day the *Daily News* was put on notice that the headline accompanying the article was erroneous, as Bryant had not been arrested for arson but instead for inciting people to violence. The *Daily News* was planning to run a follow-up A.P. dispatch in the September 8 edition, so it amended the A.P. report to include a correction of the September 6 headline. See *Daily News* Motion, Exhibit C.

Bryant now brings this action in libel against both the A.P. and the *Daily News* contending that the article and headline falsely portrayed him as an arsonist and severely damaged his reputation throughout the Caribbean. Bryant asserts that both defendants acted in disregard of the actual truth of the matter, the *Daily News* in failing to verify the accuracy of its headline and the A.P. in juxtaposing and intertwining its stories so as to leave the general public with the wrong impression.

The A.P. and the *Daily News* assert that the allegedly libelous publications are privileged within the ambit of the New York Times, infra, rule. They contend that Bryant is a public figure, and, as such, in order to prevail he must prove that defendants acted with "actual malice" toward him. Defendants urge that, on the record, Bryant has failed to make such a showing thus summary judgment should enter on their behalf.

144

## DISCUSSION

A. *Plaintiff's Status*

The first matter this Court faces is to determine the standard of fault to be applied to these defendants. In weighing the First Amendment values on one hand, with the right of citizens to protect their reputations on the other, the Supreme Court has set down the rule that if the plaintiff is a "public official" or a "public figure", the balance must be struck in favor of freedom of speech. In New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964) the Supreme Court held that the Constitution requires that, in an action for defamation relating to his official conduct, a "public official" must prove by clear and convincing evidence that an alleged defamatory statement was made with "actual malice". The Court went on to define this requisite "actual malice" as publishing articles with a knowledge of their falsity or reckless disregard for their truth. Id. The New York Times rule was later expanded by the Court to encompass "public figures" regarding matters of public interest in Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967). Later, in refusing to further extend New York Times, supra, to private individuals the Court explained why "public officials" and "public figures" must satisfy a more demanding burden of proof. In Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) the Court noted that these libel plaintiffs had "voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them" and, because of their status, had greater access than private individuals to channels of public communication in order to rebut such a falsehood. Id. at 345. The Court then went on to set forth two classifications of "public figures":

> [T]hose who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

Id. at 345.

Defendants assert in the case at issue that plaintiff clearly is a limited purpose "public figure" within the second category described above. We agree.

145

It cannot be disputed that Bryant has been a major and influential participant in St. Kitts politics over the past decade. He served intermittently as a member of the House of Assembly, the legislature of St. Kitts from 1966 until 1980. During the same period he held a position in the executive branch serving as Minister of Government for Health, Education and Social Affairs from 1967 through 1979. Bryant, as well, served as Attorney General in 1979 and 1980.

Since 1966, Bryant has been a member of the Executive Committee of the Labour Party, the party ousted from power by the Simmonds' government in 1980. He presently is, and has been since 1979, the Chairman of the Labour Party, which today retains its position as the primary opposition party in St. Kitts. In conjunction with his active party membership, Bryant writes a widely read and aptly named weekly column, "Frankly Speaking", for the voice of the Labour Party, the *Labour Spokesman*. Bryant has, thus, not shied from the public light since the Labour Party's defeat in 1980.

As to be expected, the major political issue facing St. Kitts in recent times has been its move towards independence from Great Britain. The complexities of the matter prompted nationwide emotional debate. Bryant opposed the ruling party's proposal for achieving independence and, from July 1982 up until his arrest in September 1982, he made weekly speeches in support of his opposition. Bryant was attempting to influence as many of the people as possible and admits that his role in the ongoing national debate of 1982 was a visible one.

In light of the foregoing, this Court cannot help but find Bryant to be a "public figure" for the purposes of the New York Times rule. He has clearly "thrust [himself] to the forefront of [a] particular public controversy 'i.e., the move toward independence,' in order to influence the resolution of the issues involved." Id.

Bryant attempts to avoid the "public figure" label on the basis that while he may indeed be a "public figure" in St. Kitts, he is not one in the U.S. Virgin Islands, the situs where the libel and subsequent damage occurred. The argument that one may be a "public figure" for libel purposes in one geographical area but not in another is unique and intriguing. It is not relevant here, however, as it fails to take into account the intimacy of our Caribbean community. The intermigration among the Caribbean islands is well documented. The interest in the often dynamic political developments on nearby islands is not only limited to their expatriates. As was so recently demonstrated in Grenada, Caribbean nations pay keen

146

attention to the politics of one another. While the various island communities and nations may indeed be separated by hundreds of miles of sea, we are in a real sense next door neighbors.

■ Accordingly, this Court holds Bryant, as a matter of law, to be a public figure in the Virgin Islands under both Gertz considerations.[1] First, he is able to rebut alleged false publications more effectively than any private individual due to his greater access to the media throughout the Caribbean. Id. at 344. Second, Bryant has voluntarily entered the political arena, exposed himself to public scrutiny, and, thus made himself subject to Caribbean-wide public comment. Id. at 345.

B. *Actual Malice*

Having decided that Bryant is a public figure for the purposes of libel analysis, we must next turn to see whether he has met the "actual malice" burden of New York Times, supra.

■ While noting, initially, that at one point summary judgment in libel cases may have been the rule rather than the exception, e.g. Trentler v. Meredith Corp., 455 F.2d 255, n.1 (8th Cir. 1972); Washington Post v. Keogh, 365 F.2d 965 (D.C. Cir. 1966), cert. denied, 385 U.S. 1011 (1967), more recent commentary lends itself to a contrary position. See Yiamouyiannis v. Consumers Union, 619 F.2d 932 (2d Cir.), cert. denied, 449 U.S. 839 (1980). In Hutchinson v. Proxmire, 443 U.S. 111, 120 n.9 (1979), the Chief Justice indicated in dicta that the question of "actual malice" is particularly inappropriate for summary disposition as it calls into question the defendants' state of mind. This Court will utilize a neutral approach that, in defamation actions, neither the grant nor the denial of summary judgment is favored and traditional summary judgment standards are to be applied. See Yiamouyiannis, supra; Fed. R. Civ. P. 56.

■■ The question of whether the *Daily News* or the A.P. acted with "actual malice" toward Bryant is a question of fact. Curtis Publishing Company v. Butts, 388 U.S. 130 (1967); Zurita v. Daily News, 578 F.Supp. 306 (D.V.I. 1984). Further, this Court's perspective on a motion for summary judgment is to resolve any doubt as to the

---

[1] The Supreme Court treats both the "public official" and "public figure" determinations as issues of law to be decided by the trial court. See e.g. Time, Inc. v. Firestone, 424 U.S. 448 (1976); Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974); Rosenblatt v. Baer, 383 U.S. 75 (1966).

existence of a genuine issue of material fact against the moving party. Ness v. Marshall, 660 F.2d 517 (3d Cir. 1981); Zurita, supra.

 The New York Times rule requires Bryant to prove with convincing clarity that the A.P. and the *Daily News* published the defamatory falsehood with either knowledge of its falsity or with reckless disregard for the truth. See New York Times, supra; Gertz, supra. Where, as here, defendants moved for summary judgment on the issue of "actual malice", and plaintiff claims material factual issues are presented, this court accepts plaintiff's assertions as true, determines materiality, and applies the "actual malice" standard as set forth above. See Yiamouyiannis, supra. To grant summary judgment, this court must conclude that based on Bryant's assertions no "reasonable jury could find malice with convincing clarity." Id. at 939 (quoting Nader v. de Toledano, 408 A.2d 31 (D.C. 1979), cert. denied, 444 U.S. 1078 (1980)); see Guam Federation of Teachers, Local 1581 v. Ysrael, 492 F.2d 438 (9th Cir.), cert. denied, 419 U.S. 872 (1974).

The difficulty now faced by Bryant is that the only facts which we have to apply as to the "actual malice" standard are those presented by defendants. The *Daily News* supports its motion by affidavits of the wire editor who composed the erroneous headline and the managing editor of the *Daily News*. The facts as gleaned from these affidavits indicate that at no time prior to publication did the *Daily News* have any doubt as to the truth of the headline. Further, upon being informed of the error, the paper took immediate steps to remedy same with a correction. Similarly, the A.P. supports its motion with affidavits of its correspondent in St. Kitts, who generated the information, and an employee in Puerto Rico, who drafted the pertinent dispatch. These affidavits indicate that the A.P., as well, operated with no ill will toward Bryant and in the good faith belief that the dispatch was accurate.

 The deposition of Daily News Managing Editor Penny Feuerzeig, and the affidavits of various citizens, cited by Bryant, do not contradict the essentials of what happened at the newspaper that evening. A wire editor, working against deadline, made a mistake. It was not a mistake born of malice. It may have been careless, but nothing in the record could lead us to the conclusion that it was more than that. As to the suggestion that Bryant was not a "public figure" in the Virgin Islands, a judge is not required to discard, in decision making, what is widely known to be true in the community in which that judge lives. And in our community of the Virgin

148

Islands, there are thousands of persons from St. Kitts and Nevis who are acutely aware of Bryant, his political career, and the issues in controversy.

## CONCLUSION

Bryant is a "public figure" who must make a showing of "actual malice" in order to prevail. He has not done so. No reasonable jury could find otherwise. Summary judgment will enter in favor of both defendants dismissing the complaint with prejudice.

## JUDGMENT

THIS MATTER is before the Court on summary judgment motions. The Court having filed its memorandum opinion of even date herewith, now therefore it is

ORDERED:

THAT the motions of each defendant for summary judgment are hereby GRANTED and

THAT the complaint as to each defendant is DISMISSED, with prejudice.