Robert L. **PEELER**, Plaintiff,

v.

**SPARTANBURG HERALD–JOURNAL DIVISION OF THE NEW YORK TIMES COMPANY**, Defendant.

No. C/A 7:87–1149–17.

United States District Court,
D. South Carolina,
Spartanburg Division.

March 4, 1988.

Wade S. Weatherford, III, Gaffney, S.C., for plaintiff.

Charles W. Wofford, Wallace K. Lightsey, Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., for defendant.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

This matter is before the court upon defendant's motion for summary judgment. The motion is hereby granted.

The plaintiff is a prominent Cherokee County businessman, who was successful in his bid for election to the Cherokee County School Board in 1986. He instituted this action in response to an article published in the *Spartanburg Herald–Journal* (the *Journal*), concerning business transactions between government officials who do business with the public body in which they hold office. At the time the article was printed, April 27, 1986, it was a misdemeanor for a school board trustee "to make any contract or be pecuniarily interested, directly, in any contract with any school district of which he is trustee." *S.C. Code Ann.* § 59–69–260 (1976) (amended April 29, 1986). The plaintiff claims he was defamed by the article, because it referred to him as a school trustee and noted that his business had sold three thousand four hundred thirty one and 59/100 ($3,431.59) dollars worth of ice cream to the district. *See* Defendant's Ex. A (*Journal* article). The plaintiff alleges injury due to the fact he was merely a candidate for the office, not an office holder, when the article was printed. As a candidate, it was not illegal for his business to have sold products to the Cherokee School District.

The general topic of the article was suggested to the author, *Journal* staff writer Lou Parris, by Alice Shorter, an administrative aid to the Director of the South Carolina State Ethics Commission. *See* Defendant's Ex. B, ¶ 2 (affidavit of Lou Parris dated December 29, 1987). The specific information dealing with school board member activity was obtained by Parris after the April 15, 1986 filing deadline for statements of economic interest. Parris contacted Shorter to procure a list of board members who had filed statements, which was given to Parris in the form of a computer printout. *See* Defendant's Ex. C (Deposition of Lou Parris) and Ex. B ¶ 4. Shorter told Parris she had placed an asterisk beside each board member's name, which included Peeler. *See* Plaintiff's Appendix A, Page 1; Defendant's Ex. B, ¶ 4. Parris checked these marks against another computer list, on which Peeler appeared as a school trustee. Plaintiff's Appendix A, Page 2. Parris then requested the files of those names Shorter had marked, checking to make sure that each of the persons whose file he was requesting was designated a "trustee" on the computer list. *See* Defendant's Ex. C at 15; B ¶ 4. Based on that information, Parris assumed that each of those persons was actually a board member. *See* Defendant's Ex. C at 20, B ¶ 5.

Parris then reviewed the files given to him, which included each man's statement of economic interests. In reviewing the plaintiff's statement, Parris did not notice that the plaintiff had indicated in the appropriate space that he was a candidate for the school board in the district with which his company reportedly had done business. *See,* Plaintiff's Appendix B; Defendant's Ex. C at 20–21; Defendant's Ex. B ¶ 5.

Approximately six (6) weeks after the article was published, the plaintiff was elected to the School Board for Cherokee County School District 1. *See* Defendant's Ex. E at 50 (Plaintiff's Deposition dated November 25, 1987). In fact, the plaintiff received the most votes in an eleven (11) person race for three (3) board positions. *Id.* at 51–52. He outdistanced his nearest competitor by a twenty (20%) percent margin. *Id.* The article was not an issue in the campaign. *Id.* at 50.

Parris has stated under oath that, at the time the article was published, he was not aware of its inaccuracy with regard to the plaintiff, nor did he have any doubts in his mind as to the truthfulness of the article. *See* Defendant's Ex. C at 18, 21; Defendant's Ex. B at ¶ 7. Similarly, the plaintiff has stated that he has no reason to believe that anyone at the paper, including Parris, was aware of the inaccuracy or had doubts as to the article's truthfulness at the time of publication. *See* Defendant's Ex. E at 44–45, 54. The question before the court is whether plaintiff, a public figure, can withstand defendant's summary judgment motion by showing the defendant acted with actual malice in publishing this admittedly erroneous article.

Under *Fed.R.Civ.P.* 56, summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Fed.R.Civ.P.* 56(c).

When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In addition, the summary judgment device occupies a position of great importance in libel actions as compared with other civil actions, due to the possible chilling effect which can result from the defense of defamation claims. In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the seminal constitutional decision in this area, the Supreme Court recognized the danger that

> would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which 'steer far wider of the unlawful zone.'

*Id.* at 279, 84 S.Ct. at 725.

The courts have interpreted *New York Times* as calling for the liberal use of summary judgment in libel cases. For example, in *Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C.Cir.1966), the court noted that "[i]n the First Amendment area, summary procedures are even more essential." *Id.* at 968. *Keogh* further recognized that the *New York Times* decision had, as one of its purposes, the goal of "prevent[ing] persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct of their government." *Id.*

The South Carolina Supreme Court also has expressed a preference for the dismissal by summary judgment of libel cases where, as here, the *New York Times* standard of "actual malice" is applicable:

> The presence or absence of actual malice is a constitutional issue and 'where a publication is protected by the *New York Times* immunity rule, summary judgment, rather than trial on the merits, is a proper vehicle for affording constitutional protection in the proper case.' Unless the trial court finds, based on pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice, it should grant summary judgment for the defendant.

*McClain v. Arnold,* 275 S.C. 282, 284, 270 S.E.2d 124, 125 (1980) (citations omitted).

■ Taking this standard into consideration, in order to defeat this motion, the plaintiff must demonstrate he can prove his case at trial by clear and convincing evidence. If the factual question in a libel case turns on whether the defendant has acted with actual malice,

> the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by *clear* and *convincing* evidence or that the plaintiff has not.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Moreover, the plaintiff must come forward with *concrete* evidence in opposition to the motion; he cannot merely "assert[ ] that the jury might, and legally could, disbelieve the defendant's denial ... of legal malice." *Id.* 106 S.Ct. at 2514.

■ There is no question but that the plaintiff is required to prove the defendant acted with actual malice in this case. The United States Supreme Court established in *New York Times Co. v. Sullivan, supra,* 376 U.S. 254, 84 S.Ct. 710, that a public official could not recover in a libel action based on speech relating to his official conduct unless he could prove that the defendant acted with " 'actual malice'—that is, with knowledge that [the allegedly defamatory statement] was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 725–26. In two companion cases decided several years later, the Supreme Court extended the "actual malice" standard to candidates for elected office, *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 271–72, 91 S.Ct. 621, 625–26, 28 L.Ed.2d 35 (1971); *Ocala Star–Banner Co. v. Damron,* 401 U.S. 295, 299, 91 S.Ct. 628, 631, 28 L.Ed.2d 57 (1971), as long as the allegedly defamatory speech touched upon matters relevant to the candidate's fitness for office. The Court went on to hold in *Roy,*

> as a matter of constitutional law ... a charge of criminal conduct, no matter how remote in time or place, can never be irrelevant to an official's or a candidate's fitness for office for purposes of application of the 'knowing falsehood or reckless disregard' rule of *New York Times Co. v. Sullivan.*

*Roy,* 401 U.S. at 277, 91 S.Ct. at 628. Because it is undisputed that the plaintiff was a candidate for elected office at the time of the article's publication, there can be no dispute that the "actual malice" standard applies to this case.

In order to sustain his burden of proof on the issue of actual malice, the plaintiff must

> demonstrate with clear and convincing evidence that the defendant *realized* that [the article] was false or that [it] *subjectively* entertained serious doubt as to the truth of [the article].

*Bose Corporation v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984) (emphasis added; citations omitted).

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication. *Publishing with such doubts* shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (emphasis added).

■ The plaintiff maintains he withstands this motion because a reasonable juror could view Parris' failure to investigate the meaning of the characterizations which followed the names located on the computer list as proof of actual malice. *See* Plaintiff's Memorandum in Opposition at 10. Because the plaintiff's name was followed by the letters "CA" (candidate active) rather than "EA" (elected active) as followed the others, the plaintiff argues Parris had a duty to at least ask Shorter what the letters meant. In short, plaintiff argues that failure to investigate when there is an obvious need to do so is proba-

tive of constitutional malice. The court does not agree.

■ "Failure to investigate does not in itself establish bad faith." *St. Amant*, 390 U.S. at 733, 88 S.Ct. at 1326. "[O]nly those false statements made with the *high degree of awareness* of their probable falsity demanded by *New York Times* may be the subject of [civil damages]." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964) (emphasis added). Thus, *New York Times* actual malice differs from the common law concept of malice. Under the *New York Times* standard, a defendant may act with conscious or reckless indifference toward the plaintiff's rights but, as long as the defendant believes his statements are true no liability may attach. The publisher's state of mind is the sole criterion when a public figure is involved.

Parris' conduct does not rise to the level of wrongdoing committed in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), *rehearing denied* 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197, wherein Butts, the University of Georgia athletic director, sued the *Saturday Evening Post* after an article accused Butts of fixing football games between Georgia and the University of Alabama. In *Butts*, the Court found the investigation by the reporter to be "grossly inadequate in the circumstances." *Id.* at 156, 87 S.Ct. at 1992. The reporter had allegedly overheard a conversation between Butts and Paul "Bear" Bryant. He then swore out an affidavit setting forth the details of the supposed conversation. The magazine knew the reporter "had been placed on probation in connection with bad check charges, but proceeded to publish the story on the basis of his affidavit without substantial independent support." *Id.* at 157, 87 S.Ct. at 1993.

The reporter's notes were not reviewed by the magazine before publication, nor was another participant, who also allegedly heard this information, interviewed with regard to the story. *Id.* Moreover, no football or sports expert was asked to comment on the information, which had been collected by a reporter who was, admitted-ly, not knowledgeable about the game. *Id.* at 158, 87 S.Ct. at 1993. Finally, prior to publishing the Butts article Butts and his daughter notified the magazine that the information was false. *Id.* at 161, n. 23, 87 S.Ct. at 1995.

The companion case to *Butts* provides a good comparison and presented facts more closely resembling those here. In *Associated Press v. Walker*, a news dispatch was issued arising out of events at the University of Mississippi prior to James Meredith's enrollment, which had been court-ordered. The account stated that Walker "had personally led a charge against federal marshals...." and had encouraged "rioters to use violence and [had given] them technical advice on the effects of tear gas." *Butts*, 388 U.S. at 140, 87 S.Ct. at 1983–84. The reporter was present during the events, but a difference was shown between an oral version told to the AP office and a later written version. *Id.* at 141, 87 S.Ct. at 1984. The Court found no *New York Times* malice, because the reporter's information appeared to be "trustworthy and competent ... and would not have seemed unreasonable...." *Id.* at 159, 87 S.Ct. at 1993. The Court further noted that "nothing in this series of events gives the slightest hint of a severe departure from accepted publishing standards." *Id.*

The reporter in the present case was not under the same time constraints as was the reporter in *Walker*. However, a reasonable juror could only surmise that Parris has committed mere negligence, or possibly recklessness, not rising to meet the definition of actual malice. Many cases in this vein involve factual situations, like that in the instant case, where the error was caused by a reporter or editor's misreading of documents. In particular, in *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072 (3rd Cir.1985), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151, wherein an article appeared which wrongly stated plaintiff had been indicted on drug charges, the court decided that even if Penthouse had wrongly failed to find out that the indictment had been dismissed, "its reasonable reliance on [the reporter] would have been sufficient to defeat plaintiff's attempts to show actual

malice." *Id.* at 1089. Similar to the instant case, Penthouse attempted to check the accuracy of the reporter's information, and it relied on a copy of the indictment and an article in the *Philadelphia Inquirer* which had reported on the indictment. *Id.* at 1089–90. Here, Parris and the newspaper reasonably relied on the sources provided to them by the State Ethics Commission. *See also Bryant v. Associated Press,* 595 F.Supp. 814, 818 (D.V.I.1984); *Simmons Ford, Inc. v. Consumers Union of the US, Inc.,* 516 F.Supp. 742, 747–49 (S.D.N.Y. 1981); *Lexington Herald Leader Co. v. Graves,* 9 Med.L.Rptr. 1065, 1070 (Ky. 1982); *Williams v. Pasma,* 202 Mont. 66, 656 P.2d 212, 9 Med.L.Rptr. 1004, 1008 (Mont.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *Russell v. McMillen,* 685 P.2d 255, 10 Med.L.Rptr. 1888, 1891 (Colo.App.1984).

Thus, the plaintiff has not presented the sufficient "quantum and quality" of "affirmative evidence" to enable a jury to find by clear and convincing evidence that the *Journal* knew the article was false or entertained serious subjective doubts about its truthfulness prior to publication. *See Anderson,* 106 S.Ct. at 2513–14; *Bose Corporation,* 466 U.S. at 511, n. 30, 104 S.Ct. at 1965 n. 30. "The plaintiff cannot rely upon the hope that witness cross-examination will raise a credibility issue as regards actual malice." *Fazekas v. Crain Consumer Group Division,* 583 F.Supp. 110, 114 (S.D.Ind.1984). Parris stated he considered the article truthful, accurate and fair at the time it was published. The plaintiff has not pointed to any portion of the record which contradicts Parris' good faith subjective intent. Therefore, the plaintiff has not met his burden, because he cannot prove actual malice at trial. Defendant's motion for summary judgment is granted and the case is hereby dismissed with prejudice.

IT IS SO ORDERED.