21284

L. B. McCLAIN, Appellant, v. Ligon ARNOLD and Multimedia, Inc., Defendants, of Whom Multimedia, Inc. is, Respondent.

(270 S. E. (2d) 124)

*Adam Fisher, Jr.,* Greenville, *for appellant.*

*David L. Freeman, for respondent.*

*Theo W. Mitchell,* Greenville, *for defendant Arnold.*

September4, 1980.

NESS, Justice:

This appeal is from an order granting summary judgment to respondent Multimedia, Inc. in a defamation action instituted by appellant L. B. McClain. We affirm.

On October 3rd, 1978, Multimedia published an article in its ·Greenville-Piedmont Newspaper relating to a suit for false arrest instituted by Ligon Arnold against Ingles Market Store and appellant. The article set forth the allegations of the complaint, referring specifically to appellant as the agent of Ingles who had arrested Arnold. Subsequently, it was discovered another person had made the arrest, the complaint was amended, and respondent printed a retraction.

Appellant commenced this action against respondent alleging he had been defamed by the article and the complaint upon which it was based. Respondent moved for summary judgment on the basis the article was a true and accurate report of a judicial proceeding made without malice, and the trial court granted the motion.

Appellant asserts the trial court erred in granting respondent's motion for summary judgment. We disagree.

Under the doctrine spawned in *The New York Times Co. v. Sullivan,* 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed (2d) 686 (1964), a publication concerning a "public official" is constitutionally privileged absent a showing it was made with "actual malice." Actual malice in this context has been defined as the publication of an article "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* 84 S. Ct. at 726. Therefore, if appellant, as a police officer, is classified as a public official, respondent Multimedia would be subject to liability for defamation only if the article was printed with actual malice. The critical question thus becomes whether or not a police officer is a public official within the meaning of *New York Times v. Sullivan.*

*In State v. Crenshaw,* S. C., 266 S. E. (2d) 61 (1980), we held policemen were "officers" within the meaning of the statute prohibiting public officers from accepting bribes. See Code Section 16-9-220 (1976). It is both rational and logical to extend this classification to the defamation area. Simply speaking, the status of a public official may be deemed sufficient to warrant application of the *New York Times* privilege, not because of the government employee's place on the totem pole, but because of the public interest in a government employee's activity in a particular context. *Fadell v. Minneapolis Star & Tribune Co., Inc.,* 425 F. Supp. 1075, 1083 (N. D. Ind. 1977), affirmed, 557 F. (2d) 107 (7th Cir. 1976); Handbook of Free Speech and Free Press by Barron & Dienes, page 275. Accordingly, we hereby join the majority of jurisdictions which have denominated police officers as "public officials" within the meaning of the *New York Times* doctrine.[1]

The presence or absence of actual malice is a constitutional issue and "where a publication is protected by the *New York Times* immunity rule, summary judgment, rather than trial on the merits, is a proper vehicle for affording constitutional protection in the proper case." *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F. (2d) 858, 864-865 (5th Cir. 1970). Unless the trial court finds, based on pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice, it should grant summary judgment for the defendant. *Wasserman v. Time, Inc.,* 424 F. (2d) 920, 922 (D. C. Cir. 1970) (Wright, J., concurring).

---

[1] *Rosales v. City of Eloy,* 122 Ariz. 134, 593 P. (2d) 688 (1979); *NAACP v. Moody,* 350 So. (2d) 1365 (Miss. 1977); *Ramacciotti v. Zinn,* 550 S. W. (2d) 217 (Mo. App. 1977); *Dellinger v. Belk,* 34 N. C. App. 488, 238 S. E. (2d) 788 (1977); *Ammerman v. Hubbard Broadcasting, Inc.,* 91 N. M. 250, 572 P. (2d) 1258 (1977); *Malerba v. Newsday, Inc.,* 64 A. D. (2d) 623, 406 N. Y. S. (2d) 552 (1978); *Colombo v. Times-Argus Ass'n., Inc.,* 135 Vt. 454, 380 A. (2d) 80 (1977); *McCarney v. Des Moine Register,* 239 N. W. (2d) 152 (Iowa 1976); *Corbett v. Register Publishing Co.,* 33 Conn. Sup. 4, 356 A. (2d) 472 (1975); *Rawlins v. Hutchinson Pub. Co.,* 218 Kan. 295, 543 P. (2d) 988 (1975). *See also Annot.* 19 A. L. R. (3d) 1361, 1375 (1968).

The record before the trial court was devoid of any evidence the article was published with knowing or reckless falsity; therefore, summary judgment was properly granted.

Moreover, this case is factually analogous to *Lybrand v. The State Co.*, 179 S. C. 208, 184 S. E. 580 (1936), where a libel action was based on the accurate publication of judicial proceedings commenced by summons and complaint against the plaintiff. As here, there was no assertion that the article in question was not a fair and impartial report of pleadings filed with the court. In such cases, the common law privilege attaching to reports of judicial proceedings insulates the publisher in a subsequent libel action.[2]

We hold the trial court did not err in granting summary judgment.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, GREGORY and HARWELL, JJ., concur.

---

[2] *See Time, Inc v. Firestone*, 424 U. S. 448, 459. 96 S. Ct. 958, 967-68, 47 L. Ed. (2d) 154 (1976), where the Supreme Court indicated liability may attach where the publisher fails to accurately and impartially reproduce the contents of public records.