## David Palmer v. Bennington School District, Inc.

[615 A.2d 498]

No. 91-377

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 17, 1992

*Robert E. Cummings* and *Gordon P. Black* of *Cummings & Dailey*, Bennington, and *George F. Carpinello* of *Duker & Barrett*, Albany, New York, for Plaintiff-Appellant.

*Donald W. Goodrich* and *William W. Adams* of *Donovan & O'Connor*, Adams, Massachusetts, for Defendant-Appellee.

**Johnson, J.** Plaintiff's appeal from a grant of summary judgment in a defamation counterclaim presents two issues. The first is whether a public elementary school principal is a public official within the meaning of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The second issue is whether the Bennington School District (BSD) published statements with reckless disregard for their truth or falsity. The trial court held that David Palmer, a former Bennington elementary school principal, was a public official and that he failed to produce evidence that the BSD published statements with reckless disregard for their truth. We affirm.

BSD is one of seven school districts comprising the Southwest Vermont Supervisory Union (SVSU). In June of 1984, BSD revealed an estimated two million dollar deficit that it blamed on the administration of George Sleeman, an employee of SVSU and superintendent of all seven school districts. The BSD hired an independent auditing firm to investigate the mismanagement of funds by George Sleeman and other administrators. Subsequently, the BSD brought suit against twenty-two individuals and businesses in connection with the deficit.

The BSD added Palmer to the list of defendants on June 14, 1985, on information obtained by the auditing firm. The firm discovered that Palmer had been certifying that George Sleeman's son, Alex Sleeman, worked thirty hours per week for the BSD when, in fact, he worked only twenty hours per week for the BSD and ten hours per week for the SVSU. Palmer asserted, as a counterclaim, two counts of defamation. Palmer alleged the BSD defamed him in a charge of misappropriation of funds that was read aloud by school board member Meg LeRay at an emergency open meeting of the board on April 29, 1985. The charge read, in pertinent part: "That you have been and are directing the falsification of time records of an employee of the BSD to the substantial economic loss of the BSD."

Palmer's second count of defamation rested on (1) a statement by the board on June 3, 1985, to the effect that they had received enough additional information about Palmer to add him to the list of defendants in the underlying suit, (2) the public dissemination of written charges against Palmer on June 3, and (3) a statement made by board member Gerald Morrissey on June 18, 1985, after the BSD decided not to renew Palmer's

contract. Morrissey stated that the board used, as criteria in deciding not to renew Palmer's contract, Palmer's "ethics, professional conduct, the ability to manage personnel, and manage finances."

The BSD moved for summary judgment on the defamation counterclaim in September of 1990. The BSD supported its motion with Palmer's answers to interrogatories, dated July 23, 1990, and the transcript of Palmer's deposition of June 26, 1990. In opposition to the motion, Palmer offered two affidavits. One was his own; the other was of Thomas Haley, a former school board member and co-defendant in the underlying suit brought by the BSD. Palmer also offered minutes of an October 25, 1978, school board meeting that showed the board tentatively approved Alex Sleeman's employment and minutes of an April 23, 1985, meeting that recorded nothing pertinent to this case.

In the five years since asserting the defamation counterclaim, Palmer has conducted no discovery and has produced no direct evidence of the BSD's subjective attitude toward the truth of the charge against him. Rather, Palmer asks the Court to infer from the BSD's "course of conduct" that the BSD acted with reckless disregard of the truth of its charge.

The BSD's course of conduct is uncontested. The BSD charged and suspended Palmer without the prior approval of the superintendent, George Sleeman, or the acting superintendent, Neil Cunningham, both of whom were co-defendants in the underlying suit. Similarly, the BSD did not provide information supporting the charge against Palmer to board member Thomas Haley, who was also named as a co-defendant. The school board first charged and suspended Palmer in private on April 23, 1985. Palmer claimed that his suspension was illegal because, among other things, it was not voted on in an open meeting of the board. Palmer returned to work on April 29, 1985, prompting an emergency meeting of the board on the same day. It was at this emergency meeting that Palmer was first publicly charged and suspended. The BSD delayed and canceled school board hearings on the charge against Palmer for a little over one month before receiving enough additional information to add Palmer to the list of defendants in the underlying suit.

To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99 (1990). All allegations of the non-moving party that are supported by evidence are regarded as true, and the benefit of all reasonable doubts and inferences is given to the party opposing the motion. *Id.* at 409, 578 A.2d at 99–100. Summary judgment is mandated where, after an adequate time for discovery, a party bearing the burden of proof at trial fails to make a showing sufficient to establish the existence of an element essential to his case. *Poplaski v. Lamphere*, 152 Vt. 251, 254, 565 A.2d 1326, 1329 (1989).

We agree with the trial court that a public school principal is a public official subject to the *New York Times* standard of actual malice and that Palmer failed to introduce either direct or circumstantial evidence showing that the BSD doubted the truth of its charge.

## I.

Palmer first asserts that the trial court erred in holding that he was a "public figure" within the meaning of *New York Times* simply because he was the principal of the Molly Stark Elementary School. Phrasing the issue in this manner, however, misstates the trial court's holding. The court held that David Palmer, "the principal of a public school . . . is a *public official* for the purposes of defamation law." (Emphasis added.) Although both public figures and public officials are subject to a higher burden of proof in defamation cases, *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (1967), the constitutional tests for characterizing an individual as a public figure or public official are different. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (public figure is not necessarily public official or government employee but one who has "assumed [a role] of especial prominence in the affairs of society . . . [that] invite[s] attention and comment"). The issue before this Court, then, is whether the trial court correctly held, as a matter of law, that a principal of a public school is a public official within the meaning of *New York Times*.

■ The United States Supreme Court has not determined "how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of [the *New York Times*] rule." *New York Times*, 376 U.S. at 283 n.23. Not every public employee is a public official. *Hutchinson v. Proxmire*, 443 U.S. 111, 119 n.8 (1979). Public officials include "at the very least . . . those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) (where county recreation supervisor was publicly "responsible for [the recreation area's] operation, chargeable with its failures and to be credited with its successes," his role raised "substantial argument" that he was public official). The test, then, for determining if Palmer was a public official is whether his "position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Id.* at 86. The Court stated, as a guide, that "[t]he employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* at 87 n.13.

Few courts have considered whether a school principal is a public official. Those that have are divided. *See Kapiloff v. Dunn*, 27 Md. App. 514, 524, 343 A.2d 251, 258 (1975) (high school principal whose "suitability . . . was a matter of public or general interest or concern" was "within the 'public figure-public official' classification"); *State v. Defley*, 395 So. 2d 759, 761 (La. 1981) (position of school supervisor of such apparent importance "'that the public has an independent interest in the qualifications and performance of the person . . . beyond the general public interest in the qualifications and performance of all government employees'") (quoting *Rosenblatt*, 383 U.S. at 86). But see *McCutcheon v. Moran*, 99 Ill. App. 3d 421, 424, 425 N.E.2d 1130, 1133 (1981) (*New York Times* standard is designed to protect freedom to criticize the government and those responsible for its operation, but public school principal's relationship to "conduct of government is far too remote . . . to

justify exposing [a principal] to a qualifiedly privileged assault upon his or her reputation"); *Stevens v. Tillman*, 568 F. Supp. 289, 294 (N.D. Ill. 1983) (citing *McCutcheon* for rule that principal is not a public official).

█ Because of the crucial role of public education in American society, we agree with the courts holding that a principal is a public official. The United States Supreme Court has found that "education is perhaps the most important function of state and local governments." *Brown v. Board of Education*, 347 U.S. 483, 493 (1954). Vermont's compulsory education statute reflects the state's commitment to this essential government function. See *State v. DeLaBruere*, 154 Vt. 237, 254, 577 A.2d 254, 264 (1990) (state can prosecute parents for truancy of child under 16 V.S.A. §§ 165a, 1121, 1127, because state has a compelling interest in assuring Vermont children receive minimum education necessary to function as adults and citizens). In determining that a public school principal is a public official, we find Justice Brennan's reasoning in *Lorain Journal Co. v. Milkovich*, 474 U.S. 953 (1985) (cert. denied), to be highly persuasive. Justice Brennan recognized that public schools are "the Nation's most important institution 'in the preparation of individuals for participation as citizens, and in the preservation of the values on which our society rests.'" *Id.* at 958 (quoting *Ambach v. Norwick*, 441 U.S. 68, 76–77 (1979)). He also noted that "'public school teachers may be regarded as performing a task "that go[es] to the heart of representative government."'" *Id.* (quoting *Ambach*, 441 U.S. at 75–76 (quoting *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973))). Implying that the public official designation should not be limited to government employees who set government policy, Justice Brennan stated that a proper interpretation of the *Rosenblatt* guidelines would lead to the conclusion that public school teachers, by virtue of their status, are public officials. *Id.* at 959–60. Although we need not decide whether school teachers are public officials, we nonetheless accept Justice Brennan's conclusion that education is an essential government function. Palmer satisfies the *Rosenblatt* guidelines if, as a school principal, he had, or at least "appear[ed] to the public to have, substantial responsibility for or control over the conduct" of the governmental function of education. *Rosenblatt*, 383 U.S. at 85.

Palmer argued below that his authority and power did not extend beyond his own small school. He conceded, however, that he had power and authority within his school. It is uncontested that Palmer, as school principal, managed teachers and other school employees and was in fact and appearance the person in charge of the operation of the school. Palmer conceded that he supervised and evaluated professional and nonprofessional staff, and that he certified time cards that triggered the payment of public education funds. Moreover, school boards in Vermont may delegate substantial authority to school principals over the actions of teachers and the discipline of students. See *Rutz v. Essex Jct. Prudential Committee*, 142 Vt. 400, 405, 457 A.2d 1368, 1370 (1983) (school board may delegate to principal authority to suspend or expel students); *In re Davenport*, 129 Vt. 546, 561–62, 283 A.2d 452, 460 (1971) (courts will enforce school board's delegation of authority to principals, and principals' orders to those under their control, when orders are reasonable and consistent with the policy of the board). On this record it is unclear exactly how much authority the BSD had delegated to its principals, but Palmer's admissions as to his authority provide a sufficient basis for concluding that he was a public official.

Palmer's argument that he was not renowned in the Bennington area and that his was just one of twelve elementary schools in the Bennington region is meritless. The Supreme Court rejected a similar "small fish in a big pond" argument in applying the public official designation in *Rosenblatt*, 383 U.S. at 83 ("The subject matter may have been only of local interest, but at least here, where publication was addressed primarily to the interested community, that fact is constitutionally irrelevant."). In any event, it is the public's interest in Palmer's position in government, not his personal notoriety, that pertains to the designation of public official.

A charge that a government employee responsible for disbursing public funds has misappropriated them is precisely the type of criticism of government that the First Amendment and the *New York Times* standard seek to protect. Because Palmer had responsibility for and control over the governmental function of education, his position as principal "has such apparent importance" that it justifies an independent public interest "be-

yond the general public interest in the qualifications and performance of all government employees." *Id.* at 86. A contrary holding "would stifle public debate about important local issues." *Scott v. News-Herald*, 25 Ohio St. 3d 243, 246, 496 N.E.2d 699, 703 (1986). We therefore conclude that the trial court properly held that Palmer, as principal of the Molly Stark Elementary School, was a public official for purposes of defamation law.

## II.

Having determined David Palmer was a public official, we turn to the question of whether the trial court erred in holding that the BSD did not publish the charge with reckless disregard for its truth or falsity.

In a defamation case, a public official must prove with clear and convincing evidence that the defendant acted with actual malice in the constitutional sense—that the defendant made a statement with knowledge of its falsity or with reckless disregard as to the statement's truth or falsity. *New York Times*, 376 U.S. at 285–86. To prove reckless disregard, a public official must produce "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or that the defendant acted with a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Although these tests are subjective and do not, as a rule, lend themselves to summary disposition, *Hutchinson v. Proxmire*, 443 U.S. at 120 n.9, the nature of the constitutional right to free speech protected by this standard makes the sufficiency of evidence of actual malice a question of law. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685–86 (1989). Thus, the sufficiency of a public official's evidentiary showing of actual malice may be decided by a trial judge on a motion for summary judgment. *Burns v. Times Argus Ass'n*, 139 Vt. 381, 388, 430 A.2d 773, 777 (1981).

Five years after bringing his claim, Palmer has not conducted discovery nor produced any direct evidence that the BSD doubted the truth of its charge against him. Rather, Palmer asks this Court to infer the reckless disregard portion of actual malice from the BSD's uncontested "course of conduct." We

find nothing in the BSD's course of conduct that supports such an inference.

■ On the contrary, everything the school board did suggests that they believed the auditor's report to be true on its face. Palmer conceded that he certified Alex Sleeman's time sheets. Further, Palmer conceded that the record relied on by the BSD implied that he certified that Alex Sleeman worked thirty hours per week for the BSD under Palmer's supervision. In fact, Alex Sleeman worked only twenty hours per week for the BSD; he spent ten hours per week working for the SVSU, a separate financial entity. Even if the BSD misconstrued the information provided by the auditors, malice cannot be found merely because the facts were misrepresented due to a misconception. *Id.*

■ Palmer argues that the BSD should have taken "independent steps to confirm, verify, or ask for an explanation from Mr. Palmer, the school district superintendent, the acting school district superintendent, or the actual employee." "[R]ecklessness may be found where there are obvious reasons to doubt the veracity of [an] informant or the accuracy of his reports," *St. Amant*, 390 U.S. at 732, but Palmer has introduced no evidence that the information provided by the auditor was unreliable. In fact, he conceded it was true on its face. On the other hand, the BSD did have some reason to doubt the veracity of three individuals to whom Palmer would have the board turn for an explanation of the concededly damaging record. With the exception of Alex Sleeman, they were either being investigated or had already been charged in the underlying suit. Even if we assume that these individuals would have contradicted the BSD's charge, this Court has held that the publication of a contradicted story, by itself, does not meet the standard of reckless disregard. *Colombo v. Times-Argus Ass'n*, 135 Vt. 454, 458, 380 A.2d 80, 84 (1977). The BSD's reliance on an independent auditor's report, rather than on possibly self-interested and contradictory explanations of Palmer's co-defendants, certainly does not show reckless disregard for the truth.

Palmer also argues that, because board member Thomas Haley was unaware that the charge would issue and unaware of any factual basis to support it, the BSD published the charge

with actual malice. We will not, however, draw an inference of reckless disregard for the truth from the BSD's unwillingness to provide information to a board member who was himself under investigation for the misappropriation of funds.

First Amendment guarantees of free speech require public officials to prove actual malice with clear and convincing evidence. Palmer has failed, after five years, to introduce any direct or circumstantial evidence that the BSD issued its charge with reckless disregard for the truth. Summary judgment was therefore appropriate.

*Affirmed.*