Shirley JOHNSON, Plaintiff,

v.

ROBBINSDALE INDEPENDENT SCHOOL DISTRICT NO. 281, and Frank J. Madden, Donald Wagner, Linda Powell, Marian Priest, Marcia Melson, Lanette Werdahl, Dave LaBat, Nancy Lee, Jim Dolan, Cheryl Lindberg, Susan Bergstrom, as individuals and in their official capacities, and Cyndy Bear, Julie Bjerke, Karen Forslund and Randy Forslund, Defendants.

Civ. No. 4–92–1013.

United States District Court,
D. Minnesota,
Fourth Division.

July 29, 1993.

Robert Joseph Brenner, Robert Brenner & Assoc., Garrett T. Geiger, Geiger Law Office, Minneapolis, MN, for plaintiff.

J. Dennis O'Brien, William John Egan, Rachel Kaplan, Rider Bennett Egan & Arundel, Minneapolis, MN, for defendants.

William Thomas Egan, Rachel Kaplan, Rider Bennett Egan & Arundel, Martin N. Burke, Andrea M. Fike, Faegre & Benson, Minneapolis, MN, for Frank J. Madden.

Brian Alan Wood, J. Dennis O'Brien, Amy K. Adams, Rider Bennett Egan & Arundel, Minneapolis, MN, for Karen and Randy Forslund.

### ORDER

DOTY, District Judge.

This matter is before the court on a motion for summary judgment brought by defendants Karen and Randy Forslund. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants defendants' motion.

### BACKGROUND

Shirley Johnson ("Johnson") is an African–American female. In 1990, Johnson was hired by Robbinsdale Independent School District No. 281 ("the District") to serve as the principal of the Meadow Lake Elementary School ("Meadow Lake"). She was hired on a probationary basis and had a one year contract. Before the school year began, the District sent parents a letter announcing Johnson as the principal of Meadow Lake. At the time she was hired, Johnson was the only black principal in the District. Defendants Karen and Randy Forslund are parents with two children who attend Meadow Lake. The Forslunds are not employed by the District.

At the beginning of the school year, Johnson implemented a new lunch schedule that was unpopular with staff and parents. The Meadow Lake staff complained about Johnson's lack of communication and procedures being changed without their input. In October 1990, Johnson received an unfavorable evaluation concerning, primarily, her relationship with the staff and communication with parents. The District issued Johnson a notice of deficiency. The notice was revised and corrected in part in December 1990. Johnson filed a grievance challenging her performance appraisal.

On December 19, 1990, the District superintendent and forty staff members from Meadow Lake met to discuss concerns regarding Johnson's performance as principal. The staff alleged that Johnson gave preferential treatment to minority children. The staff accused Johnson of dismissing discipline problems concerning minority children as a "cultural thing," while punishing white children for similar behavior. After the meeting, the District superintendent initiated an investigation.[1]

On December 21, 1990, a group of minority parents along with members of the news media asked to meet with Don Wagner ("Wagner"), director of elementary education for the District. After meeting with Wagner, the parents and media proceeded to Meadow Lake to meet with Johnson. The parents entered the school and disrupted some classrooms. The media interviewed Johnson and broadcast the segment on the evening news. Staff members and parents complained about how Johnson handled the incident; some parents worried about the safety of their children.

Sometime in late December or early January, Karen and Randy Forslund wrote a letter to the superintendent and the school

---

1. In January 1991, the District suspended Johnson with pay and benefits pending the outcome of the investigation. Minority parents and others protested the suspension. On February 19, 1991, Johnson requested reinstatement and filed a charge with the Equal Employment Office

Commission alleging racial discrimination. Johnson was reassigned as "principal on special assignment" with no change in pay or benefits. On May 21, 1991, Johnson was served with formal notice that the school board declined to renew her contract for the following year.

board voicing their concerns about Meadow Lake and Johnson. The letter said that the Forslund children "learned prejudice from Johnson" by watching "black children misbehave and having no consequences" while white children were punished for the same situation. The Forslund children apparently "saw black children return from the principal's office with candy while white children were given yellow slips." The Forslunds stated that black children had been assaulting white children on the bus. Although parents reported the problem, it continued for a month before Johnson took action by appearing on the bus and telling the students to stop. The Forslunds said they heard that Johnson called a certain teacher a racist during a confrontation with the faculty. The teacher was an acquaintance of the Forslunds and they defended her in the letter. The Forslunds also complained about the lunch schedule imposed for the first few weeks of the school year.

In summary, the Forslunds stated:

"All of these things show me that Shirley Johnson is not a good administrator. She cannot handle the job. In addition to not being able to do the job, *she* has introduced prejudice to the children and faculty. She should not be whining about her skin color. Her inability to be a principal has caused more harm to Meadow Lake school and its population than her skin color."

Johnson sued Karen and Randy Forslund based on the allegedly defamatory statements made in their letter.

The Forslunds move for summary judgment contending that Johnson is a public official within the meaning of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and has provided no evidence of actual malice. In the alternative, the Forslunds claim that Johnson is at least a public figure. Finally, the Forslunds urge this court to hold that the statements in the letter are shielded by a qualified privilege which has not been abused. Johnson contends that she is neither a public official nor a public figure. Johnson admits there is no evidence that the Forslunds acted with actual malice but requests that she be allowed more time to conduct discovery.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in her favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

*Public Official Status Under New York Times*

In *New York Times*, the Supreme Court recognized that public policy supports a "pro-

found national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. at 270, 84 S.Ct. at 721. To encourage open debate, the Court imposed a constitutional rule which bars a public official from recovering damages for defamatory publications unless the official proves the statements were made with actual malice. *Id.* at 270–80, 84 S.Ct. at 721–26.

The United States Supreme Court has not decided "how far down into the lower ranks of government employees the 'public official' designation would extend." *Id.* at 283 n. 23, 84 S.Ct. at 727 n. 23. Not every public employee is a public official. *Hutchinson v. Proxmire*, 443 U.S. 111, 119 n. 8, 99 S.Ct. 2675, 2680 n. 8, 61 L.Ed.2d 411 (1979). Public officials include "at the very least ... those among the hierarchy of governmental employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). *See, e.g., Standke v. B.E. Darby & Sons, Inc.*, 291 Minn. 468, 473, 193 N.W.2d 139, 143 (1971).

■ The issue before the court is whether a public elementary school teacher is a public official within the meaning of *New York Times*. The question is one of first impression in Minnesota. The public or private status of a plaintiff in a defamation action is one of law. *New York Times*, 376 U.S. 254, 84 S.Ct. 710; *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn. 1985). Although summary judgment is a "blunt instrument," it is favored in defamation cases involving public officials because it prevents the discouragement of full and free expression of a person's First Amendment

rights concerning the conduct of their government. *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 504 (Minn.App.1989), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

■ The Minnesota Supreme Court has evinced its intent to define "public official" broadly. The Court has held that government employees who "perform governmental duties, directly related to the public interest, are public officials and, as such, fall squarely within the 'actual malice' requirement set forth in *New York Times v. Sullivan*." *Hirman v. Rogers*, 257 N.W.2d 563, 566 (Minn. 1977). The court uses three criteria in evaluating whether a plaintiff is a public official: (1) employees performing governmental duties directly related to the public interest; (2) employees holding a position to influence significantly the resolution of public issues; and (3) employees having, or appearing to the public to have, substantial responsibility for or control over the conduct of government affairs. *Britton v. Koep*, 470 N.W.2d 518, 522 (Minn.1991).[2]

While there are no Minnesota decisions directly on point, other jurisdictions have considered whether a school principal is a public official. Those courts are divided. *See Palmer v. Bennington School District, Inc.*, 615 A.2d 498, 501 (Vt.1992) (elementary school principal is a public official); *Kapiloff v. Dunn*, 27 Md.App. 514, 343 A.2d 251, 258 (1975) (high school principal is a public official), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976); *State v. Defley*, 395 So.2d 759, 761 (La.1981) (school supervisor is a public official); *Reaves v. Foster*, 200 So.2d 453, 456 (Miss.1967) (high school principal is a public official); *Junior–Spence v. Keenan*, 1990 WL 17241, *4 (Tenn.Ct.App.1990) (high school principal is a public official).[3] *But see Ellerbee v. Mills*, 262 Ga. 516, 422 S.E.2d

---

**2.** Since the *New York Times* case, the Minnesota Supreme Court has decided several defamation cases involving public officials: *Britton v. Koep*, 470 N.W.2d 518 (Minn.1991) (county probation officer); *Diesen v. Hessburg*, 455 N.W.2d 446 (Minn.1990) (county attorney), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991); *Hirman v. Rogers*, 257 N.W.2d 563 (Minn.1977) (deputy sheriff and police officers); *Standke v. B.E. Darby & Sons, Inc.*, 291 Minn.

468, 193 N.W.2d 139 (1971) (grand jurors either public officials or public figures); *Mahnke v. Northwest Publications, Inc.*, 280 Minn. 328, 160 N.W.2d 1 (1968) (police officer).

**3.** The Tennessee appeals court relied on the decision in *Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn.1978), which is quoted favorably in *Britton. See* 470 N.W.2d 518, 523 (Minn.1991).

539, 540 (1992) (high school principal is not a public official), *cert. denied,* — U.S. —, 113 S.Ct. 1833, 123 L.Ed.2d 460 (1993); *McCutcheon v. Moran,* 99 Ill.App.3d 421, 54 Ill.Dec. 913, 914, 425 N.E.2d 1130, 1131 (1981) (public school principal's relationship to conduct of government is too remote to justify public official designation).

The division among courts appears to be based on differing perspectives concerning whether education is an important aspect of government and the responsibility for and control principals have over public education. Courts that have found public official status reason that the apparent importance of principals invokes an independent public interest in their qualifications and performance beyond the general public interest in all government employees. Courts that have not applied the heightened standard conclude that, under normal circumstances, a principal's relationship with government does not warrant public official status under *New York Times.*

Education of children is of vital importance to our society. *See, e.g., Plyler v. Doe,* 457 U.S. 202, 222–223, 102 S.Ct. 2382, 2397, 72 L.Ed.2d 786 (1982). Education is an essential government function. *See Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954) ("education is perhaps the most important function of state and local governments"). Minnesota's compulsory education statute reflects the centrality of public education. Principals are the persons who control, supervise and govern public schools. Minn.Stat. § 123.34. While principals must adhere to rules set by the board of education and the school board, they have broad authority over the format of educational programs employed in public schools. *Id.* Thus, principals have significant governmental power over public education and the students they supervise.

■ The court concludes that Minnesota courts would hold that public school principals are government employees who exercise significant authority in the performance of governmental duties. Thus, the court holds that public school principals criticized for their official conduct are public officials for purposes of defamation law. A contrary holding would stifle public debate about important local issues. *See Rosenblatt,* 383 U.S. at 85, 86 S.Ct. at 675 ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.").

It is undisputed that Johnson, as school principal, managed teachers and other school employees and at least appeared to the public to be the person in charge of operating the school. Johnson contends, however, that her job description does not present an accurate picture of her real authority. Johnson claims that her superiors, as well as disloyal subordinates, denied her the power she theoretically had as principal of Meadow Lake. It is clear that in the eyes of the public Johnson was the person in charge of Meadow Lake. The fact that Johnson appeared to have responsibility over the conduct of education at Meadow Lake is sufficient to trigger public official standards. *See, e.g., Rosenblatt,* 383 U.S. at 85, 86 S.Ct. at 675. It is not crucial for Johnson to actually exercise the power the public perceived her to possess.

Because Johnson is a public official, an essential element of her defamation claim against the Forslunds is clear and convincing proof that the statements were made with actual malice. "Actual malice" means with knowledge that the statements were false or with reckless disregard of whether they were true or false. *New York Times,* 376 U.S. at 279–80, 84 S.Ct. at 725–26. "Reckless disregard" requires evidence that the defendants "in fact entertained serious doubts as to the truth of the publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). Whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 685, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989); *Diesen v. Hessburg,* 455 N.W.2d 446, 464 (Minn.1990).[4]

4. Johnson incorrectly asserts that the jury should resolve the issue of whether the Forslunds acted

■ The record reveals no evidence that the Forslunds entertained any serious doubts as to the truth of their statements. Most of the information was provided to the Forslunds by their children. There is no evidence to suggest that the Forslunds had any reason to suspect their children's accounts were not credible. Johnson's reliance on *Hunt v. University of Minnesota,* 465 N.W.2d 88 (Minn.App.1991), is misplaced. That case dealt with common law malice, not the constitutional standard of actual malice as defined in *New York Times. See Rosenblatt* 383 U.S. at 84, 86 S.Ct. at 675 (common law standard of "ill will, evil motive, intention to injure" insufficient where a public official is concerned). The court concludes that Johnson has failed to provide any evidence that the Forslunds made the statements with actual malice.

It is not necessary for the court to decide whether Johnson is a public figure or whether an important public issue is involved. If the court were to reach those issues, however, it would answer them affirmatively under the circumstances of this case. Likewise, the privilege issue raised in this case need not be decided. The court notes, however, that at least two jurisdictions recognize such a privilege. *See Brody v. Montalbano,* 87 Cal. App.3d 725, 151 Cal.Rptr. 206, 211 (1978) (letters from parents to school board concerning school principal are privileged), *cert. denied,* 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979); *Swenson–Davis v. Martel,* 135 Mich.App. 632, 354 N.W.2d 288, 290–91 (1984) (*citing Weiman v. Mabie,* 45 Mich. 484, 486, 8 N.W. 71 (1881)) (parent who complains to appropriate official about fitness of public school teacher is privileged).

### CONCLUSION

The court concludes that Johnson as a public school principal is a public official for purposes of applying the *New York Times v. Sullivan* defamation standard. Because Johnson is a public official, the Forslunds are liable for damages for criticizing her official conduct only if Johnson proves with convinc-

with actual malice. While common law malice and its resolution fall within the province of the jury, the constitutional limitation of actual mal-

ing clarity that they made the statements with actual malice. This Johnson has failed to do.

Accordingly, **IT IS HEREBY ORDERED** that the motion of defendants Karen Forslund and Randy Forslund for summary judgment is granted. **IT IS FURTHER ORDERED** that the parties shall bear their own costs. The court, finding there is no just reason for delay, directs that **JUDGMENT BE ENTERED** as to defendants Karen Forslund and Randy Forslund.

ice in a case involving a public official is properly addressed by the court.