552 S.E.2d 319

**Johnny GOODWIN, Respondent,**

v.

**Reverend David KENNEDY, individually, and the Abbeville Chapter of C.A.F.E., a nonprofit corporation, Appellants.**

No. 3379.

Court of Appeals of South Carolina.

Heard March 7, 2001.

Decided Aug. 6, 2001.

Rehearing Denied Sept. 19, 2001.

---

32

34

Stephen John Henry, of Greenville, for appellants.

Thomas E. Hite, Jr., of Abbeville, for respondent.

CONNOR, J.:

In this defamation action, Johnny Goodwin sued David Kennedy and the Abbeville Chapter of C.A.F.E., a nonprofit corporation, for allegedly slanderous statements Kennedy made while Goodwin was an assistant principal of a local high school. The jury returned a verdict for Goodwin and awarded him actual damages of $5,000 and punitive damages of $25,000. Kennedy appeals.[1] We affirm.

## FACTS

This action arises out of statements Kennedy made about Goodwin on two occasions in February and March of 1997. At that time, Goodwin was an assistant principal at Abbeville

---

1. For simplicity, "Kennedy" shall also include his organization, C.A.F.E., where appropriate.

High School, and his responsibilities included ninth-grade discipline.

The first incident occurred on February 6, 1997, when the parents of a suspended student brought their son to school following his three-day suspension for fighting. School policy required that a parent return with the student for re-enrollment. The parents were accompanied by Kennedy, the organizer of C.A.F.E.,[2] and Kennedy's assistant, Carol Bishop.

Goodwin noted it was unusual for parents to bring someone else to a conference. However, he proceeded with the meeting in his office, during which Kennedy vigorously objected to the discipline given to the suspended student. Kennedy asked to hear from the teacher who recommended the suspension, and the teacher was brought into the conference as well. As the meeting became progressively heated, the principal of Abbeville High School, Mike Campbell, joined the meeting at Goodwin's request approximately thirty minutes after the meeting began. According to Goodwin, the meeting took on racial overtones when Kennedy repeatedly and vociferously questioned why the African–American student was suspended, while the Caucasian student purportedly involved in the incident was not.

As the meeting ended and after Campbell had asked Kennedy to leave, the parties walked out of Goodwin's office into the receptionist's area, where the secretary was sitting with her four-year-old grandson. Kennedy allegedly stated he was "not running" and then yelled, "I am not a house nigger. There is your house nigger right there [indicating Goodwin] and you are his master slave owner [indicating principal Campbell]." Kennedy repeated the words four or five times in a loud voice. Goodwin and Kennedy are both African–American. Campbell is Caucasian.

The second incident of alleged slander occurred on March 25, 1997. On that date, a full school board meeting was held at Calhoun Falls High School, at which the board was to

---

2. According to Kennedy, he was the organizer of four chapters of C.A.F.E. (Carolina Alliance of Fair Employment), which he stated is involved in challenging corruption of the police and sheriff's departments, assisting persons terminated from employment, and providing help with school matters and other issues affecting the community.

consider a recommendation that the same suspended student be placed in an alternative school. When Goodwin exited the meeting room and walked into the hallway, Kennedy loudly stated in the presence of about fifteen persons present for the meeting, "There is the house nigger and the master slave owner is standing right down there."

Goodwin filed this defamation action against Kennedy and the Abbeville Chapter of C.A.F.E. on September 11, 1997, alleging Kennedy's statements caused him to suffer great pain and mental anguish, damaged his reputation, and brought his fitness to serve in his profession into question.

At trial, Kennedy admitted making the statements attributed to him at the meeting on March 25, 1997, and testified they were negative comments meaning Goodwin was a traitor and a puppet. The trial judge charged the jury on slander per se and slander per quod. The jury returned a verdict in favor of Goodwin for $5,000 actual damages and $25,000 punitive damages. Kennedy appeals.

## LAW/ANALYSIS

### I. Slander Per Se

■ Kennedy contends the trial judge erred in denying his motion for a directed verdict as to whether the alleged defamatory statements constituted slander per se, and in charging the jury on slander per se.[3]

■ Slander is actionable per se when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 511, 506 S.E.2d 497, 502 (1998). In a defamation action that is actionable per se, general damages are pre-

---

3. For better understanding of the issues involved in this opinion, we will follow the Supreme Court's directive and use the following language to refer to the two parts of a slander action. A statement is (1) either defamatory per se or defamatory per quod, and (2) either actionable per se or not actionable per se. *See Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497 (1998).

sumed and need not be proven by the plaintiff. *Constant v. Spartanburg Steel Prods., Inc.*, 316 S.C. 86, 447 S.E.2d 194, *cert. denied,* 513 U.S. 1017, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994).

In this case, Goodwin alleged Kennedy's statements were actionable per se because they imputed an unfitness in his profession when considered in the context in which they were spoken. At trial, Goodwin defined the comments as meaning that he was a traitor to his own race, and stated the remarks were evil, degrading, and "just plain embarrassing." Kennedy testified that he meant Goodwin was a puppet of the principal and a traitor to the African–American student who was disciplined. He conceded the term was "bad" and "negative." Kennedy also admitted his statements arose from his concern about Goodwin's actions as an assistant principal interfering with the African–American student's education. We also note the statements were both made in the course of Goodwin carrying out his responsibilities as an assistant principal.

Goodwin testified students did not respond as well to his discipline after the incidents. One student even told Goodwin he was "a disgrace to [his] race." Goodwin believed this comment was a direct result of Kennedy's public remarks. Goodwin felt Kennedy's comments affected his ability to discipline the students effectively. Goodwin testified that because of these continuing difficulties, he retired in June of 1998. He stated he could not think of anything worse than what Kennedy said to him in public.

The circuit court denied Kennedy's motion for a directed verdict, ruling that when viewed in the light most favorable to Goodwin,.there was evidence that the statements were defamatory and that the statements charged Goodwin with unfitness in his profession. The court noted that both Goodwin and Kennedy had testified the words were intended to mean Goodwin was a traitor to his race regarding his actions in disciplining the students.

In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion and to deny the motion where either the evidence yields more than one inference or

its inference is in doubt. *Strange v. South Carolina Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). "The trial court can only be reversed by this Court when there is no evidence to support the ruling below." *Id.* at 430, 445 S.E.2d at 440. "In essence, we must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor." *Bultman v. Barber*, 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981).

We find the trial judge did not err in ruling that whether the statements were defamatory is a question for the jury as the finders of fact. Viewing the evidence in the light most favorable to Kennedy, it is a reasonable inference that, under the circumstances in which Kennedy made the statements, the jury could find those statements defamatory.

■ Likewise, the question of whether the statements were actionable per se or not actionable per se was a matter for the jury to determine as the finders of fact. *See Turner v. Montgomery Ward & Co.*, 165 S.C. 253, 261, 163 S.E. 796, 798–99 (1932) ("[T]he evidence adduced by the plaintiff in the case at bar required the submission to the jury of the question whether the language used by [the defendant] charged the plaintiff with the commission of such crime."). A reasonable inference arising from Goodwin's testimony is that Kennedy's comments were directed at Goodwin's alleged unfitness in his profession as an assistant school principal. Specifically, the jury could find Kennedy assailed Goodwin's integrity and decision-making ability when carrying out his responsibility to discipline all students, African–American and Caucasian, fairly. Another reasonable inference from Kennedy's comments is that he was attributing racism and bias to Goodwin in his dealings with the students in matters of discipline. It cannot be said that when viewing the evidence in the light most favorable to Goodwin, the jury could not have inferred that the statements attacked Goodwin's fitness to serve as an assistant principal.

■ Accordingly, we find no error in the trial judge's decision to deny Kennedy's motion for a directed verdict on the issue of whether Kennedy's statements were actionable

per se.[4]  Consequently, we also reject Kennedy's assertion that the trial judge's charge to the jury on this issue was error.

## II.  Request to Charge on "Opinion"

Kennedy contends the trial judge committed reversible error by denying his written request to charge the jury that the "mere expression of opinion is not slander."

On appeal, Kennedy cites no South Carolina authority on point.  However, we note that in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the United States Supreme Court remarked, "Under the First Amendment there is no such thing as a false *idea.*  However pernicious an *opinion* may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other *ideas.*  But there is no constitutional value in false statements of fact."  *Id.* at 339–40, 94 S.Ct. 2997 (footnote omitted) (emphasis added).

In *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), the Supreme Court observed that its language in *Gertz* "has become the opening salvo in all arguments for protection from defamation actions on the ground of opinion, even though the case did not remotely

---

4.  We also reject Kennedy's argument that the context in which the statement was made cannot be considered when determining if it is defamatory.  Kennedy also misguidedly argues that if the context of the words is considered, then the statement cannot, as a matter of law, be actionable per se.  Kennedy has cited no authority for this proposition.  To the contrary, the law in South Carolina allows the context of the words themselves and the circumstances under which the words are spoken to be considered in determining whether there is a defamatory meaning and whether it is actionable per se.  *Herring v. Lawrence Warehouse Co.,* 222 S.C. 226, 235, 72 S.E.2d 453, 455 (1952) (holding that when considered in light of circumstances, employer's statement that employee was "short" was clearly defamatory and actionable per se because it alleged the commission of a crime, namely theft); *Lily v. Belk's Dept. Store,* 178 S.C. 278, 182 S.E. 889 (1935); *Turner v. Montgomery Ward & Co.,* 165 S.C. 253, 163 S.E. 796 (1932); *see Sandifer v. Electrolux Corp.,* 172 F.2d 548 (4th Cir.1949) (holding under South Carolina law, where words themselves do not impute the commission of a crime, the jury may consider surrounding circumstances to determine whether statement was defamatory because it charged the commission of a crime).  Therefore, we dismiss Kennedy's arguments in that regard as unsupported by the law of defamation in this State.

concern the question." *Id.* at 18, 110 S.Ct. 2695 (quoting *Cianci v. New Times Publ'g Co.,* 639 F.2d 54, 61 (2nd Cir. 1980)). The *Milkovich* Court reasoned that, read in context, "the fair meaning of the [*Gertz* ] passage is to equate the word 'opinion' in the second sentence with the word 'idea' in the second sentence," and that "the language was merely a reiteration of Justice Holmes' classic 'marketplace of ideas' concept." [5] *Id.*

In *Milkovich,* a high school wrestling coach brought a defamation action against a newspaper and a reporter. The Supreme Court rejected the defendants' argument that there is a First Amendment protection afforded defamatory statements which are categorized as "opinion" rather than "fact." *Id.* at 17–23, 110 S.Ct. 2695. The Court held that couching a statement with a defamatory connotation in terms of an opinion does not grant an exemption for anything that might be said. The Court concluded:

> [W]e do not think this passage from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labeled "opinion." Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact.

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Id.* at 18–19, 110 S.Ct. 2695 (citation omitted); *see also* 50 Am.Jur.2d *Libel and Slander* § 105 (1995) ("In *Milkovich,* the

---

5. *See Abrams v. United States,* 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting) ("[T]he ultimate good desired is better reached by free trade in ideas [and] the best test of truth is the power of the thought to get itself accepted in the competition of the market[.]").

United States Supreme Court rejected the creation of an artificial dichotomy between opinion and fact, holding that the Constitution does not require a wholesale defamation exemption for anything that might be labeled 'opinion.' "). Because Kennedy's request to charge appears to exempt all opinion as non-defamatory comment without qualification, we find no error in the circuit court's decision to deny Kennedy's proposed jury charge.

### III.  Epithet

Kennedy next asserts the trial judge erred in denying a directed verdict because the alleged statements were mere epithets and not defamatory, and in failing to charge the jury that name-calling and insults cannot be slanderous.

At trial, Kennedy argued he was entitled to a directed verdict because there was no evidence the comments were anything other than epithets. The trial judge denied the motion for a directed verdict, stating "all of the words have to be considered in the context with which they are used." The court stated whether the words were defamatory or not presented "factual questions" for the jury. We agree with the trial judge that, viewing all the evidence in the light most favorable to Goodwin, as we are required to do, whether the comments were defamatory presented a question of fact for the jury to determine. Thus, we find no error in the denial of a directed verdict on this basis.

To the extent Kennedy argues the trial judge erred in denying his request to charge the jury on epithet, we also find no error. Kennedy sought a charge to the effect that name-calling, insults, and profanity do not constitute slander, citing *Smith v. Phoenix Furniture Co.*, 339 F.Supp. 969 (1972). We have reviewed *Phoenix Furniture* and find Kennedy's request to be an incomplete statement of the law announced therein. In *Phoenix Furniture*, the court granted summary judgment for the defendant because the allegedly defamatory words, "bastard" and "son-of-a-bitch," were not actionable per se, and the plaintiff had suffered no special damages. *Smith v. Phoenix Furniture Co.*, 339 F.Supp. 969, 971 (1972). Further, the court found the only witnesses to the defendant's allegedly defamatory statements, the plaintiff's wife and mother-in-law, did not believe the words spoken and "did not understand the

words spoken as being other than words uttered in anger." *Id.* at 971–72. The trial judge summed up his ruling by stating, "It does not appear that anyone who heard the words alleged spoken understood them in a defamatory sense." *Id.* at 972.

In *Capps v. Watts*, 271 S.C. 276, 246 S.E.2d 606 (1978), the South Carolina Supreme Court stated that "the words 'paranoid sonofabitch' are words of abuse and scurrility and that such words, on their face, are not, as a general rule, considered defamatory." *Id.* at 281–82, 246 S.E.2d at 609. The Court went on to explain, however, that when viewed in light of the extrinsic facts pleaded in plaintiff's complaint, the words were capable of having a defamatory meaning. *Id.* at 282, 246 S.E.2d at 609. The court clearly held that words of "abuse and scurrility" can be defamatory when the circumstances surrounding their publication are considered and that it is the jury's responsibility to decide whether the words are defamatory or not. *Id.* at 282, 246 S.E.2d at 609–610 ("It is not the words alone but the circumstances surrounding their publication which renders them susceptible of a [defamatory] construction. It is for the jury to determine whether they were used in a [defamatory] sense given the circumstances.")

Kennedy requested the jury be charged the following: "Name calling, insults and profanity, absent the showing of special damages is not slander." The trial judge seemed troubled by the broad statement of law offered by defense counsel. The judge did not believe he could give the charge as proposed without some quote or further explanation. The judge was correct, and it would have been an incorrect statement of the law to have charged the jury that insults or profanity cannot be defamatory, as extrinsic facts may be proven to show the defamatory nature of the remarks. We find the charge as a whole was proper, and note that the judge did not preclude the defense from arguing that the alleged defamatory statements were mere insults or name-calling. *Keaton v. Greenville Hosp. Sys.*, 334 S.C. 488, 514 S.E.2d 570 (1999) (holding a jury charge which is substantially correct and covers the law does not require reversal). Accordingly, we find no error in the trial judge's refusal to charge in this instance.

## IV. Public Official

Kennedy next alleges the trial judge erred by not finding Goodwin was a public official and, accordingly, charging the jury on the plaintiff's burden of proving actual malice and the falsity of the alleged defamatory statement.

The designation of a plaintiff as a public official is considerable in a defamation action. "In defamation actions involving a 'public official' or 'public figure,' the plaintiff must prove the statement was made with 'actual malice,' i.e., with either knowledge that it was false or reckless disregard for its truth." *Elder v. Gaffney Ledger*, 341 S.C. 108, 113, 533 S.E.2d 899, 901 (2000).

Kennedy argued Goodwin, as an assistant principal, was a public official. On that basis, Kennedy asserted he was entitled to a jury charge that Goodwin had the burden of proving actual malice and the falsity of the statements. The trial judge ruled Goodwin was not a public official.

The United States Supreme Court explained that a plaintiff may be designated a "public figure" in two circumstances:

In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Gertz*, 418 U.S. at 351, 94 S.Ct. 2997.

On appeal, Kennedy cites no South Carolina authority on point, but references South Carolina cases holding police officers and assistant police chiefs are public officials for purposes of defamation actions. *See, e.g., Miller v. City of West Columbia*, 322 S.C. 224, 471 S.E.2d 683 (1996) (applying Constitutional actual malice standard in case involving assistant police chief); *Beckham v. Sun News*, 289 S.C. 28, 344 S.E.2d 603, *cert. denied*, 479 U.S. 1007, 107 S.Ct. 646, 93 L.Ed.2d 702 (1986) (applying Constitutional actual malice standard in case involving former police officer); *McClain v. Arnold*, 275 S.C. 282, 270 S.E.2d 124 (1980) (holding police

officer is a public official); *Gause v. Doe,* 317 S.C. 39, 451 S.E.2d 408 (Ct.App.1994). We find these cases involving law enforcement officers are not controlling here.

Kennedy also relies upon *Johnson v. Robbinsdale Independent School District No. 281,* 827 F.Supp. 1439 (D.Minn.1993) (holding public school principals criticized for their official conduct are public officials for purposes of defamation law) and *Reaves v. Foster,* 200 So.2d 453 (Miss.1967) (holding a school principal seeking recovery for defamation has the burden of showing actual malice).

We find these cases to be distinguishable. Both concern whether a school *principal* should be deemed a public official, not an *assistant principal.* Further, as Kennedy acknowledges, there is no clear consensus among those jurisdictions which have considered the issue of whether a school principal is a public official for purposes of a defamation claim.

> Courts are divided as to whether a public school principal is a public official. Some courts have held that public school principals are public officials, but others have held that public school principals are not public officials, reasoning that principals in general are far removed from the general conduct of government and are not policymakers at the level intended by the *New York Times* ruling.

50 Am.Jur.2d *Libel and Slander* § 65 (1995) (footnotes omitted); *see also Palmer v. Bennington Sch. Dist., Inc.,* 159 Vt. 31, 615 A.2d 498, 501 (1992) ("Few courts have considered whether a school principal is a public official. Those that have are divided.").

Kennedy's argument that an assistant principal is a public official is less than compelling in view of the conflicting decisions over whether a principal, much less an assistant principal, is a public official. *Compare Ellerbee v. Mills,* 262 Ga. 516, 422 S.E.2d 539, 540 (1992) ("[U]nder normal circumstances, a principal simply does not have the relationship with government to warrant 'public official' status under *New York Times.* Principals, in general, are removed from the general conduct of government, and are not policymakers at the level intended by the *New York Times* designation of public official."), *cert. denied,* 507 U.S. 1025, 113 S.Ct. 1833, 123 L.Ed.2d 460 (1993), *and McCutcheon v. Moran,* 99 Ill.App.3d 421, 54

Ill.Dec. 913, 425 N.E.2d 1130, 1133 (1981) ("The relationship a public school teacher or principal has with the conduct of government is far too remote, in our minds, to justify exposing these individuals to a qualifiedly privileged assault upon his or her reputation."), *and East Canton Educ. Ass'n v. McIntosh,* 85 Ohio St.3d 465, 709 N.E.2d 468, 475 (1999) (noting there is a split among other jurisdictions and stating, "[W]e believe that the better view is that principals are not public officials for purposes of defamation law."), *with Bennington School Dist., Inc.,* 615 A.2d at 501 ("Few courts have considered whether a school principal is a public official. Those that have are divided. Because of the crucial role of public education in American society, we agree with the courts holding that a principal is a public official." (citations omitted)).

Goodwin was an assistant principal whose duties included ninth-grade discipline. In the context of this case, we believe Goodwin was not a public official. His position as assistant principal is not one "among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Accordingly, we agree with the trial judge that Goodwin, as an assistant principal, is not a public official and Kennedy was not entitled to such a jury charge.

## V. Instruction on Reputational Damages

Kennedy contends the trial judge erred in submitting the issue of reputational damages to the jury because there was insufficient evidence to support this instruction.

"The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 484, 514 S.E.2d 126, 133 (1999).

General damages in a defamation action include injury to reputation, mental suffering, hurt feelings, and other similar types of injuries which are not capable of a definite monetary valuation. *Holtzscheiter,* 332 S.C. at 510 n. 4, 506 S.E.2d at 502 n. 4. Special damages, on the other hand, are

tangible losses or injury to the plaintiff's property, business, occupation or profession, which are capable of being assessed monetarily and which result from injury to the plaintiff's reputation. *Id.*

At trial, Kennedy objected to charging the jury on reputational damages. The trial judge overruled the objection, noting there was evidence that Kennedy's statements affected the students' attitude toward Goodwin at school.

We find no error. Goodwin testified students heard Kennedy's comments at the school board meeting on March 25, 1997. He also stated that Kennedy's comments had an effect on the students as some students did not respond to his disciplinary efforts and he "thought it was pretty much a direct result of [the comments]." He recalled one incident when he disciplined a student and the student told him he was "a disgrace to [his] race." Goodwin stated he believed the remark "was a direct result of the house nigger calling, the names that had been called." Because there was some evidence of reputational damage, we find no error in the charge.

## VI. Slander Per Quod

Kennedy asserts the trial judge should have granted a directed verdict in his favor on the issue of slander per quod because Goodwin failed to prove special damages.

Kennedy argues the alleged defamatory remarks were not actionable per se and Goodwin was required to plead and prove special damages. Kennedy claims no proof of special damages was presented because Goodwin did not testify that he suffered any monetary loss to his property or profession. *See Holtzscheiter*, 332 S.C. at 510 n. 4, 506 S.E.2d at 502 n. 4 (stating special damages are tangible losses or injury to the plaintiff's property, business, occupation or profession, which are capable of being assessed monetarily and which result from injury to the plaintiff's reputation).

We find no reversible error in this regard. Goodwin testified his reputation was damaged and approximately one year later he reluctantly retired because of continuing difficulties with the students. Furthermore, if the jury found the remarks charged unfitness in his profession, no proof of special damages was needed. Because interrogatories were not sub-

mitted to the jury, the basis for the jury's award is unknown. The jury reasonably could have found the comments actionable per se. *See Piedmont Aviation, Inc. v. Quinn,* 294 S.C. 502, 504, 366 S.E.2d 31, 32 (Ct.App.1988) ("Where a case is submitted to the jury on two or more theories and a general verdict is returned, the verdict will be upheld if it is supported by at least one [of the theories].") (quoting *Gasque v. Heublein, Inc.,* 281 S.C. 278, 281, 315 S.E.2d 556, 558 (Ct.App. 1984) (alteration in original)). Therefore, we find the argument to be without merit.

## VII.  Alleged Hearsay Testimony of Lula Clinkscale

Kennedy lastly asserts the trial judge committed reversible error by allowing hearsay testimony from Lula Clinkscale.

Clinkscale was not present when the February 1997 statements were made by Kennedy at Abbeville High School. She was present at the March 1997 incident at Calhoun Falls High School, but did not hear the alleged defamatory statements. Clinkscale testified she did not know specifically what the term "house nigger" meant, although she knew it was bad. During her testimony, however, Clinkscale recounted a meeting she had with Kennedy after the March incident:

And at St. James Church was when we was there trying to compromise with him, you know, so he could stop saying these words *because the kids were beginning to say the same words.* And, you know, I thought it was bad. [Emphasis added.]

Kennedy objected to any reference to what the children were saying on the basis of hearsay. The court overruled the objection, stating it was being admitted not for the truth of the matter asserted, but to show how the children were affected or what they did.

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE.

We agree with the circuit court that the testimony was not offered for the truth of the matter asserted, but to show the effect on the students to support Goodwin's claim of reputa-

tional damages. Testimony that students were repeating the slanderous statements was relevant for purposes of establishing Goodwin's reputational damages. Therefore, we hold the testimony was not hearsay and was properly admitted.

For the foregoing reasons, the judgment below is

**AFFIRMED.**

HUFF and HOWARD, JJ., concur.